FILED
2022 Sep-27  AM 11:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **SHARHONDA HOPE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:21-cv-00183-AMM** |
| | ) |
| **ANDREW SAUL,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OF DECISION

Plaintiff Sharonda Hope brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("benefits") and supplemental security income. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner and **DENIES** Ms. Hope's motion to remand.

## I.    Introduction

On November 8, 2012, Ms. Hope filed an application for benefits under Title II of the Act, alleging disability as of November 1, 2012. R. 101–12. Also on November 8, 2012, Ms. Hope filed an application for supplemental security income

1

under Title XVI of the Act, alleging disability as of November 1, 2012. R. 113–24. Ms. Hope alleges disability due to bipolar disorder and schizophrenia. R. 101, 113.

The Social Security Administration ("SSA") initially denied Ms. Hope's applications on March 1, 2013. R. 99–100, 112, 124. An Administrative Law Judge ("ALJ") held a hearing on June 4, 2014 and then entered an unfavorable decision on November 13, 2014. R. 151–66. The Appeals Council remanded the November 2014 decision, R. 171–74, and a second hearing was held on September 20, 2016. R. 68–75. After the second hearing, the ALJ again issued an unfavorable decision on July 31, 2018. R. 18–34. Ms. Hope appealed to this court, which granted the Commissioner's motion for a voluntary remand on September 11, 2019. R. 1158–59.

On October 11, 2019, the Appeals Council remanded Ms. Hope's case to a new ALJ. R. 1164–69. Ms. Hope received a telephone hearing before ALJ Clarence Guthrie on May 14, 2020. R. 1085–131. On July 16, 2020, ALJ Guthrie issued a decision, finding that Ms. Hope was not disabled from November 12, 2012 through the date of his decision. R. 1054–76. Ms. Hope was thirty-three years old at the time of the ALJ decision. R. 101, 1054.

Ms. Hope appealed to the Appeals Council and submitted written exceptions to the unfavorable decision. R. 979–1018. The Appeals Council considered the reasons provided and the issues of the case and found no reason to assume

jurisdiction on January 22, 2021. R. 970–74. After the Appeals Council declination, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On February 8, 2021, Ms. Hope sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.   The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. §§ 404.1520, 416.920. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525,

404.1526, 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c), 416.920(g)(1), 416.960(c).

The ALJ determined that Ms. Hope last met the insured status requirements of the Act on December 31, 2013. R. 1058, 1060. Next, the ALJ found that Ms. Hope had not engaged in substantial gainful activity since her alleged onset date. R. 1060. The ALJ decided that Ms. Hope had the following severe impairments: obesity; Raynaud's syndrome; chronic obstructive lung disease/interstitial lung disease; schizoaffective disorder, bipolar type; post-traumatic stress disorder; and alcohol abuse. R. 1060. The ALJ found that Ms. Hope's essential hypertension, unspecified anxiety disorder, GERD, hiatal hernia, acute tachycardia, chronic fatigue, and ankle fracture (right) residual were not severe because "the medical evidence of record does not show that these impairments have caused more than minimal limitations for a continuous period of not less than 12 months." R. 1060. Overall, the ALJ determined that Ms. Hope did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 1061. The ALJ also determined that "[t]he severity of [Ms. Hope's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, and 12.15." R. 1061.

The ALJ found that Ms. Hope's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 1064. The ALJ found that

Ms. Hope had the "residual functional capacity to perform light work" with certain limitations. R. 1062. The ALJ determined that Ms. Hope must never: climb ladders, ropes, or scaffolds, or be exposed to workplace hazards such as moving mechanical parts and high exposed places. R. 1062. The ALJ also determined that Ms. Hope can: frequently handle and finger bilaterally; and occasionally be exposed to irritants such as fumes, odors, dust, gases, poorly ventilated areas, and chemicals. R. 1062. The ALJ limited Ms. Hope to simple and routine tasks, but not at a production rate pace. R. 1062. The ALJ found that Ms. Hope: has the ability to make simple work-related decisions; can tolerate occasional changes in work setting; can tolerate no interaction with the public, but occasional interaction with coworkers; and can accept instructions and respond appropriately to supervisors, where this interaction occurs occasionally throughout the workday. R. 1062.

According to the ALJ, Ms. Hope was "has no past relevant work." R. 1074. According to the ALJ, Ms. Hope is "a younger individual," she has "at least a high school education," and she is able to communicate in English, as those terms are defined by the regulations. R. 1074. The ALJ determined that "[t]ransferability of job skills is not an issue because [Ms. Hope] does not have past relevant work." R. 1074. Because Ms. Hope's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," the ALJ enlisted a vocational expert to opine "whether jobs exist in the national

economy for an individual with [Ms. Hope's] age, education, work experience, and residual functional capacity." R. 1075. The vocational expert testified that such individual "would be able to perform the requirements of representative occupations such as assembler . . . ; hand packager . . . ; and sorter." R. 1075, 1125–27.

Based on these findings, the ALJ concluded that Ms. Hope did not have a disability as defined in the Act, from November 1, 2012 through the date of the decision, July 16, 2020. R. 1058, 1075–76. Ms. Hope now challenges that decision.

## III. Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by

substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.   Discussion

Ms. Hope alleges that the ALJ's decision should be reversed because "[t]he ALJ erred in rejecting the opinions of" Dr. Goff, Dr. Nichols, and Dr. Bentley, "[t]he Appeals Council failed to acknowledge and failed to review an updated psychological evaluation from Dr. June Nichols[,]" and the ALJ's denial of benefits was not based on substantial evidence. Doc. 12 at 3. Additionally, Ms. Hope has

moved to remand pursuant to sentence four of 42 U.S.C. § 405(g) based on her arguments for reversal and sentence six of 42 U.S.C. § 405(g) based on a September 22, 2021 notice that Ms. Hope meets the medical criteria for SSI. Doc. 13 at 1.

## A. Rejection of Medical Opinions

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, whether the opinion is consistent with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. § 404.1527(c).

The regulations and case law establish a general preference for assigning greater weight to the opinions of treating medical sources than the opinions of non-treating medical sources, and greater weight to the opinions of non-treating medical sources than the opinions of non-examining medical sources. *See* 20 C.F.R. §§ 404.1527(c)(1)-(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford Comm'r of Soc. Sec.*, 363 F.3d

1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

"Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). On the other hand, the opinions of a one-time examiner or of a non-examining medical source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

An ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). Further, an ALJ does not err when it declines to give a medical opinion controlling weight, if the ALJ articulates specific and proper reasons for doing so. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *see also Beegle v. Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012).

Additionally, applicable regulations provide that physicians' opinions on issues such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d). The court focuses on the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician may be relevant to the ALJ's findings, but they may not be determinative, because the ALJ bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Finally, Social Security Ruling 06-3p concerns the consideration of opinions and evidence from sources who are not "acceptable medical sources." Although it was rescinded effective March 27, 2017, SSR 06-3p was in effect during Ms. Hope's claim. SSR 06-3p. The ruling distinguishes between acceptable medical sources and others and provides reasons for the necessity of the distinction. Evidence from "other sources" may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.*

Ms. Hope asserts that the ALJ erred by rejecting the medical opinions of Dr. John R. Goff, Dr. June Nichols, and Dr. Jack Bentley. The court will address the opinions of each physician.

### i. Dr. John R. Goff

Dr. Goff completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on March 9, 2017. R. 797–99. First, Dr. Goff opined that Ms. Hope's "ability to understand, remember, and carry out instructions" was affected by her impairment. R. 797. Dr. Goff found that Ms. Hope had "mild" limitations in her ability to: understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; understand and remember complex instructions; and carry out complex instructions. R. 797. Pursuant to the form, "mild" indicates that "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." R. 797. Dr. Goff found that Ms. Hope had "marked" limitations in her ability to make judgments on complex work-related decisions. R. 797. Pursuant to the form, "marked" indicates that "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." R. 797. To support this assessment, Dr. Goff noted that he could not "agree with th[e] assumption" that Ms. Hope was malingering. R. 797. Instead, he pointed to "[o]ther aspects of the record" that "suggest the impairments noted." R. 797.

Second, Dr. Goff opined that Ms. Hope's "ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting" was affected by her impairment. R. 798. Dr. Goff found that Ms. Hope had "marked" limitations in her ability to: interact appropriately with the public; interact appropriately with co-workers; and respond appropriately to usual work situations and to changes in routine work settings. R. 798. Dr. Goff found that Ms. Hope had "extreme" limitations in her ability to interact appropriately with supervisors. R. 798. Pursuant to the form, "extreme" indicates that the individual is "[u]nable to function in this area independently, appropriately, effectively, and on a sustained basis." R. 797. To support this assessment, Dr. Goff noted that "[t]hroughout the record we see indications for an apparent inability for her to get on with others." R. 798. While Dr. Goff was not certain that diagnoses of impulse control disorder and schizoaffective disorder were "correct," he stated that "the implication is for interpersonal difficulties of substantial proportions." R. 798.

Additionally, Dr. Goff noted that the record suggested "deficits in self management." R. 798. Dr. Goff did not answer the question regarding the contribution of alcohol or substance abuse to Ms. Hope's limitations. R. 798. Finally, Dr. Goff opined that Ms. Hope could not manage benefits in her own best interest. R. 799.

Dr. Goff also completed a "Medical Interrogatory – Mental Impairment(s) – Adult." R. 801–05. In response to Question 7 regarding Ms. Hope's impairments, Dr. Goff stated:

> Deficits in impulse control and psychiatric symptoms are prominent throughout the record. She has been variously diagnosed with Generalized anxiety disorder, Mood disorder nos, schizoaffective disorder, ETOH dependence, Personality disorder nos. She is described as having constant mood swings. She was malingering . . . . That doesn't mean there is nothing wrong with her.

R. 801 (citations omitted). Dr. Goff was also asked to rate the degree of Ms. Hope's limitations in a work setting. Dr. Goff rated Ms. Hope as having a mild limitation in understanding, remembering, or applying information. R. 802. Dr. Goff rated Ms. Hope as having a marked limitation in concentrating, persisting, or maintaining pace. R. 802. Dr. Goff rated Ms. Hope as having an extreme limitation in both interacting with others and adapting or managing oneself. R. 802. Dr. Goff stated that he could not determine whether Ms. Hope's impairments, combined or separately, meet or medically equal the criteria for any listed impairment. R. 803. Finally, Dr. Goff stated:

> Throughout the record we see mentions of an auto accident with loss of consciousness in adolescence. She was apparently hospitalized before that at age 13. The head injury may have occurred at age 18 but we cannot be sure. So we have a woman with a history of a head injury in adolescence, with obvious problems with impulse control, possible hallucinations and delusions and cutting behavior as well as alcohol dependence. She was malingering for

Dr. Griffith and that resulted in an erroneous conclusion that she has no limitations.

1) Attempts should be made to determine the nature and severity of the head injury

2) She may need another neuropsychological evaluation with prior notification about the necessity for a straightforward presentation.

3) I reiterate, an invalid study cannot be used as evidence of a lack of deficits. As the examiner in 13 F states, he cannot make those judgments. He then proceeds to do so in the MSS.

4) There is at least a possibility that this woman has an organic personality disorder due to the head injury. That possibility cannot be ruled out with the information in the file.

R. 805 (citations omitted).

The ALJ first stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." R. 1063. Later, the ALJ afforded Dr. Goff's opinions "little weight, as they make no mention of [Ms. Hope's] alcohol issues, which are prevalent and obvious throughout the record. Therefore, the validity of the entire report is called into question, as it is not consistent with the record as a whole and is not adequately explained with citation to any objective evidence." R. 1073. Additionally, the ALJ specifically cited Dr. Goff's assessment of a separate medical opinion stating, "I am providing the opinion at Exhibit 15F no weight as it is based on an invalid presentation, and as pointed out subsequently by Dr. Goff, if it was an invalid study or presentation, then any opinions about functional abilities would be invalid." R. 1058.

Ms. Hope argues that "[t]he ALJ made only passing reference to Dr. Goff's opinions," but did not challenge the ALJ's specific reasons for discounting Dr. Goff's opinions. Doc. 12 at 16; *see Harner v. Comm'r*, 38 F.4th 892, 898–99 (11th Cir. 2022) (holding that an appellant "forfeited any challenge" to issues on appeal when the argument in the appellant's brief consisted "only of block quotations from and cursory mentions of various decisions of this and other courts"); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that an appellant forfeits an issue when she "raises it in a perfunctory manner without supporting arguments and authority"). However, out of an abundance of caution the court will address the specific reasons given by the ALJ for discounting Dr. Goff's opinion.

*First*, the ALJ's extensive discussion of the medical evidence of record is replete with notations to Ms. Hope's "long history of polysubstance abuse." R. 1063–70 (citing Exhibits 7E, 1F, 2F, 5F, 6F, 7F, 10F, 11F, 19F, 24F, 27F, 28F, 30F, 35F, 36F). Thus, substantial evidence supports the ALJ's statement that he is affording little weight to Dr. Goff's opinion because it makes no mention of Ms. Hope's history of alcohol issues.

*Second*, the ALJ stated that Dr. Goff's opinion is not consistent with the record as a whole. With respect to Ms. Hope's mental impairments, the ALJ made specific findings regarding Ms. Hope's limitations that mirror each of the four categories

upon which Dr. Goff opined. R. 1061–62. The ALJ found that Ms. Hope has a moderate limitation in understanding, remembering, or applying information. R. 1061. The ALJ found that Ms. Hope has a marked limitation in interacting with others. R. 1061. The ALJ found that Ms. Hope has a moderate limitation in concentrating, persisting, or maintaining pace. R. 1062. And, the ALJ found that Ms. Hope has a moderate limitation in adapting or managing oneself. R. 1062. To make these determinations, the ALJ cited to hearing testimony and objective evidence in the record. R. 1061–62. Ms. Hope has not pointed to any objective evidence in support of her argument. Substantial evidence supports the ALJ's treatment of Dr. Goff's interrogatories.

*Third*, while Dr. Goff generally cites exhibits in his answers to medical interrogatories, as noted by the ALJ, his answers are "not adequately explained with citation to any objective evidence." R. 801–02, 1073. For example, when opining that Ms. Hope had extreme limitations in interacting with others and adopting or managing oneself and marked limitations in concentrating, persisting, or maintaining pace, Dr. Goff was asked to "Cite the exhibit and page number that supports your opinion." R. 802. He answered: "Described above under 7." R. 802. Dr. Goff's response to Question 7 states: "Deficits in impulse control and psychiatric symptoms are prominent throughout the record. She has been variously diagnosed with Generalized anxiety disorder, Mood disorder nos, schizoaffective disorder,

ETOH dependence, Personality disorder nos. (8F) She is described as having constant mood swings (9F). She was malingering in 13F. That doesn't mean there is nothing wrong with her." R. 801. Substantial evidence supports the ALJ's statement that Dr. Goff's conclusions are "not adequately explained with citation to any objective evidence," and Ms. Hope does not point to specific, objective medical evidence in support of her position. R. 1073.

### ii.   Dr. June Nichols

Dr. Nichols completed a Disability Determination Comprehensive Evaluation on January 26, 2013 upon referral from Disability Determination Services. R. 595–98. Ms. Hope reported "problems with impulse control and drinking," "chronic anger," and "severe mood swings." R. 595. Dr. Nichols summarized Ms. Hope's mental status exam. R. 596–97. Ms. Hope had clear, direct, normal, and confrontive speech; intense affect with no evidence of anxiety; clear stream of consciousness; oriented to time, place, person, and situation; intact recent and remote memory; poor general fund of knowledge; somewhat concrete thinking; normal thought processes with no evidence of confusion, association, tangentiality, thought blocking, or flight of ideas; unremarkable thought content without evidence of hallucinations or delusions; poor judgment and insight; and low-average range of intelligence. R. 596–97.

Dr. Nichols's prognosis was:

> . . . . [Ms. Hope] has been able to gain employment but loses it because of conflicts on the job. Her ability to relate interpersonally and withstand the pressures of everyday work is severely compromised due to the nature of her personality issues and explosive nature. She does not have deficits that would interfere with her ability to remember, understand, or carry out simple work-related instructions. She is able to handle her own funds and live independently. The prognosis for change is poor as Ms. Hope denies any desire for change at the present time.

R. 598.

The ALJ specifically discussed Dr. Nichols's consultative psychological evaluation in his formation of Ms. Hope's residual functional capacity. R. 1065. The ALJ stated:

> The claimant told Dr. Nichols she had been having problems with impulse control and drinking since she was 18-years old. The claimant also told Dr. Nichols she had only cut herself in the past when she had been drinking. She also stated she only had crying spells when she was drinking. She stated she drank to get drunk and to sleep. The claimant said she would drink seven beers, plus liquor, if it were available. During the evaluation, the claimant was reported to have acted bizarrely and displayed poor impulse control. While she could not complete serial sevens, she completed serial threes, correctly counted backward from 20, and spelled "world" backward correctly. Her general fund of knowledge was poor and her thinking was somewhat concrete: however, her thought processes were within normal limits and her thought content did not indicate any hallucinations or delusions. Her insight and judgment were poor and Dr. Nichols estimated the claimant functioned in the low - average range of intellectual ability. She diagnosed the claimant with impulse control disorder, bipolar I disorder most recent episode manic, alcohol dependence, and

> antisocial personality disorder. Dr. Nichols assigned the claimant a GAF of 45.

R. 1065. Later in his decision, the ALJ afforded Dr. Nichols's opinions "moderate weight as they arise from a one-time examination and are not entirely consistent with the record as a whole." R. 1072. Ms. Hope argues that the ALJ "refused to accept the opinions of the Commissioner's experts 'without good cause," and failed to state with at least 'some measure of clarity' grounds for decision in repudiating the opinions." Doc. 12 at 24–25. However, the ALJ specifically listed two reasons for the weight given to Dr. Nichols's opinion: one-time examination and consistency with the record as a whole. Ms. Hope has made no argument with respect to the reasons given. *See Harner*, 38 F.4th at 898–99. The ALJ's decision complies with applicable regulations and is supported by substantial evidence. *See* 20 C.F.R. §§ 404.1527(c)(1)–(4), 416.927(c)(1)–(4). Additionally, the ALJ's residual functional capacity incorporates limitations that meet or exceed those suggested by Dr. Nichols's opinion. Substantial evidence supports the ALJ's treatment of Dr. Nichols's opinion.

### iii.   Dr. Jack Bentley

Dr. Bentley examined Ms. Hope on May 24, 2019, after DDS referred Ms. Hope to Dr. Bentley for a Mental Examination. R. 1410–12. In addition to physical symptoms, Dr. Bentley noted that Ms. Hope "has a long history of suicidal ideation, depression, anxiety, poor impulse control a[n]d rages." R. 1410. Ms. Hope described

herself as a "chronic Alcoholic since 18 years of age when she was involved in a MVA," but has been "better able to manage her temper since discontinuing the use of alcohol." R. 1410–11. Dr. Bentley noted that Ms. Hope "discontinued the use of alcohol 18 months ago." R. 1410. Dr. Bentley also noted that while "a variety of psychiatric medicines . . . seemed to improve [Ms. Hope's] functioning . . . [she] hasn't had access to these medications in over one year." R. 1410.

Dr. Bentley summarized Ms. Hope's mental status exam. R. 1411. While she "made fair eye contact," "[t]here were no limitations in her receptive or expressive communication skills[,]" "[h]er tertiary and immediate memories were intact[,]" and "[s]he provided relevant responses to all questions[,]" "[m]ost of her answers were unusually brief and marked by hostility." R. 1411. Also, "[h]er mood was mildly dysphoric," "her affect was restricted," she was "openly hostile," and "[t]here was evidence of some anxiety, restlessness and agitation." R. 1411.

Dr. Bentley's diagnostic impression was:

> Probable PTSD
> Alcoholism, in remission
> Multiple Health Problems, as previously described

R. 1411. Additionally, Dr. Bentley summarized his findings as follows:

> SUMMARY
> . . . . The patient is 32 years old and has numerous health problems but her medical records provided little support or medical evidence to confirm these diagnoses. It is the general impression of this clinician that these reported diagnoses are exaggerated to some degree. In spite of her

reported history of a Schizoaffective Disorder, Schizophrenia and a Bipolar Disorder, her MSE was not suggestive of these diagnoses. It is further the opinion of this clinician that this individual has not likely ever had any form of Schizophrenia. The most conspicuous aspect to the exam was her obvious anger directed at this clinician regarding several issues in her day-to-day life.

Symptom exaggeration is suspected. She is competent to manage fund[s] should they be awarded. The prognosis for her current level of functioning is favorable.

Based on the results [of] this examination, the patient would have moderate to marked limitations in her ability to sustain complex or repetitive work-related activities. Her impairment level for simple tasks would fall in the mild range. The patient is likely capable of communicating effectively with coworkers and supervisors if properly motivated. . . .

R. 1412.

The ALJ thoroughly discussed Dr. Bentley's May 2019 evaluation of Ms.

Hope. R. 1068–69. The ALJ wrote:

On May 24, 2019, the claimant underwent an evaluation conducted by Jack L. Bentley, Jr., Ph.D. (Exhibit 30F). The claimant told Dr. Bentley that she had discontinued the use of alcohol 18 months prior to the evaluation after multiple arrests and life issues due to her use of alcohol. She reported she was better able to manage her temper since discontinuing the use of alcohol. The mental status exam showed the claimant was appropriately attired, there were no limitations in her receptive or expressive communication skills, her tertiary and immediate memories were intact, and most of her answers were unusually brief and marked by hostility at having to undergo the interview and angry at the MHC and other agencies. The claimant's mood was mildly dysphoric and her affect was restricted, she was openly hostile throughout the interview, she was alert and oriented, she

was able to recall one of three objects after a five minute delay, she correctly recited 6 digits forward and 3 backwards, she correctly interpreted one of two proverbs and stated the analogy in three of three abstractions, she failed to perform serial 7's and 3's, but she correctly spelled the word "world" forward and backwards, and finally she was able to count backwards from 20 to 1. Dr. Bentley diagnosed the claimant, in pertinent part, with alcoholism in remission. He noted that although the claimant had numerous health problems, her medical records provided little support or medical evidence to confirm these diagnoses. He stated it was his general impression these reported diagnoses were exaggerated to some degree. He explained that in spite of her reported history of a schizoaffective disorder, schizophrenia, and bipolar disorder, her mental status exam was not suggestive of these diagnoses. He added that in his opinion, the claimant had never likely had any form of schizophrenia and symptom exaggeration was suspected. He reported the claimant was competent to manage funds if they were awarded and her prognosis was favorable. He opined the claimant would have moderate to marked limitations in her ability to sustain complex or repetitive work related activities; her impairment level for simple tasks would fall in the mild range; and she was likely capable of communicating effectively with coworkers and supervisors if properly motivated.

R. 1068–69. The ALJ went on to explain how he considered the opinion evidence.

With respect to Dr. Bentley's opinion, the ALJ stated:

I note Dr. Bentley is a licensed professional in counseling and is not licensed to practice psychology in the State of Alabama; therefore, he is not an acceptable medical source (Exhibit 30F). . . . [His] opinion[], however, can be evaluated as opinions of an "other source," Social Security Ruling 06-3p states in addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 C.F.R. §§ 404.1513(d)

and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to: medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. Information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. I find that Dr. Bentley's opinion is entitled to partial weight, as the analysis is adequately explained and supported with objective evidence and it is reasonably consistent with the record as a whole. As always, while there may be discrepancies between Dr. Bentley's specific opinions and markings and the limitations reflected in the claimant's residual functional capacity, these discrepancies are based on my independent review, my consideration of the claimant's testimony, and all other evidence in the aggregate, some of which may not have been available to Dr. Bentley at the time of the expressed opinions.

R. 1073–74.

Ms. Hope argues that "[t]he ALJ wrongly rejected the opinions of Jack Bentley, a Medical Expert chosen by the Commissioner, because he was not licensed in Alabama." Doc. 12 at 25. Specifically, she states that "[t]he Commissioner cannot reject opinions of experts chosen by the Commissioner based on inadequate qualifications." *Id.* The Commissioner argues that "the ALJ did not discount Dr. Bentley's opinion" on the basis that he "is not an acceptable medical source because

he is a licensed professional counselor (LPC), not a psychologist." Doc. 14 at 14. Instead, the Commissioner argues that the ALJ "properly evaluated" Dr. Bentley's opinion "under the applicable agency policy," specifically SSR 06-3p. *Id.*

The ALJ's decision clearly states that he evaluated Dr. Bentley's opinion under the applicable legal standards. The ALJ's decision also gives specific reasons for affording Dr. Bentley's opinion partial weight – and those reasons do not include his classification as an "other source." Ms. Hope does not challenge those reasons, *see Harner*, 38 F.4th at 898–99, and the court finds substantial evidence supports the ALJ's findings with respect to Dr. Bentley's opinion.

### B. Appeals Council Treatment of Updated Evaluation

A claimant generally may present new evidence at each stage of the administrative process, including to the Appeals Council. *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

Evidence is not new when it is cumulative of evidence already submitted to the ALJ. *Clough v. Comm'r*, 813 F. App'x 436, 443 (11th Cir. 2020). Evidence is material when it is "relevant and probative so that there is a reasonable possibility

that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987). New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Medical opinions based on treatment occurring after the date of the ALJ's decision may still be chronologically relevant if they relate back to a time on or before the ALJ's decision. *Washington v. Comm'r*, 806 F.3d 1317, 1322 (11th Cir. 2015).

The Appeals Council is not required to provide a detailed rationale for why each piece of new evidence fails to change the ALJ's conclusion. *Mitchell v. Comm'r*, 771 F.3d 780, 784 (11th Cir. 2014). The court reviews *de novo* whether supplemental evidence is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1321.

Ms. Hope submitted Written Exceptions to the ALJ's unfavorable decision to the Appeals Council on August 13, 2020. R. 979–1053. She included in her submission a psychological evaluation and mental health questionnaire from Dr. Nichols. R. 1044–53. Dr. Nichols completed a Psychological Evaluation of Ms. Hope on August 4, 2020. R. 1044–53. Dr. Nichols's report includes a discussion of Ms. Hope's medical history. R. 1044–46. Dr. Nichols reported that while Ms. Hope began drinking alcohol when she was eighteen years old, she quit drinking in 2019 and has been clean. R. 1047. Dr. Nichols summarized Ms. Hope's mental status

exam. R. 1047–48. Ms. Hope had good eye contact; clear, normal speed; a depressed mood; congruent thought processes; a clear stream of consciousness; adequate speed of mental processing; grossly intact recent memory; fair immediate memory; adequate general fund of knowledge; and abstract thinking. R. 1047–48. However, her "[t]hought content was positive for visual hallucinations of shadows," "she is extremely uncomfortable in a crowd of people," she is obsessive or compulsive, she experiences daily panic attacks, she experiences flashbacks to a motor vehicle accident, and she has nightmares about the accident. R. 1048. Dr. Nichols wrote:

> At this time, [Ms. Hope] is not drinking, she has followed up with Quality of life, and maintains a diagnosis of schizoaffective disorder. However, she has not talked with anyone there about the ongoing nightmares, the flashbacks, the ideas of reference, the need to be able to always see a way of escape, the inability to take a shower because of the tight space, the chronic fear of people and the feelings of guilt that are inescapable. She continues to experience ongoing panic attacks.
>
> . . . .
>
> She meets the diagnostic criteria for the diagnosis of PTSD, delayed expression.
>
> Ms. Hope is able to understand, remember and carry out very short and simple instructions. She cannot maintain attention, concentration and/or pace for periods of at least two hours. She likely cannot perform activities within a schedule and be punctual within customary tolerances, she has had difficulty even going out on her own porch. She can sustain an ordinary routine without special supervision. She cannot adjust to routine and infrequent work changes, she isolates at home and avoids people. She

> cannot interact with supervisor and/or coworkers. She
> cannot maintain socially appropriate behavior and adhere
> to basic standards of neatness and cleanliness. She would
> likely be off task 35–40% of an 8 hour day. She would
> like[ly] fail to report to work 10 to 15 days out of a 30 day
> work period. Her limitations appear to have existed back
> to 11/1/12.

R. 1050–51. Dr. Nichols also completed a Mental Health Source Statement and

indicated that Ms. Hope can: understand, remember, and carry out very short and

simple instructions and sustain an ordinary routine without special supervision. R.

1052. However, Dr. Nichols indicated that Ms. Hope cannot: maintain attention,

concentration, and/or pace for period of at least two hours; perform activities within

a schedule and be punctual within customary tolerances; adjust to routine and

infrequent work changes; interact with supervisor and/or co-workers; or maintain

socially appropriate behavior and adhere to basic standards of neatness and

cleanliness. R. 1052. Finally, Dr. Nichols completed a mental health questionnaire.

R. 1053.

The Appeals Council "considered the reasons" the Ms. Hope "disagree[d]

with the [ALJ] decision." R. 970. The Appeals Council "found no reason under our

rules to assume jurisdiction." R. 970. The Appeals Council's determination

specifically referenced the August 13, 2020 exceptions. R. 970. The Appeals

Council also wrote: "You submitted additional evidence from Dr. June Nichols,

dated August 4, 2020 to August 12, 2020 (9 pages). We find this evidence does not

show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." R. 971.

Ms. Hope argues that "[t]he Appeals Council failed to acknowledge and failed to review and failed to mention an updated psychological evaluation from Dr. June Nichols submitted with the Written Exceptions." Doc. 12 at 25. Ms. Hope also stated that "the Appeals Council failed to consider the evaluation and failed to acknowledge the evaluation." *Id.* at 26. However, as the Commissioner noted in his brief, the Appeals Council specifically referenced the evidence and stated that it "does not show a reasonable probability that it would change the outcome of the decision." Doc. 14 at 16; R. 971. Ms. Hope's hope argument is based on a faulty review of the record, and she did not make any other arguments regarding the Appeals Council's treatment of Dr. Nichols's evaluation and questionnaire submitted with the written exceptions. The Appeals Council did not err in finding that the "evidence does not show a reasonable probability that it would change the outcome of the decision." R. 971.

### C. Subsequent Favorable Decision

To obtain a remand under sentence six of 42 U.S.C. § 405(g), a plaintiff must establish: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit

the evidence at the administrative level." *Hunter v. Comm'r*, 808 F.3d 818, 821 (11th Cir. 2015). "[A] later favorable decision is not evidence for § 405(g) purposes." *Id.* at 822. However, the evidence supporting a subsequent favorable decision may constitute new and material evidence under § 405(g). *Id.* at 821–22.

In her motion to remand, Ms. Hope argues that remand is appropriate under sentence six of 42 U.S.C. § 405(g) "due to the . . . SSI notice that claimant meets the medical criteria for SSI . . . issued 9/22/21." Doc. 13 at 1. Ms. Hope also argues that "[t]he subsequent favorable decision undermines the ALJ's decision to disregard the opinions of Dr. Goff, Dr. June Nichols[,] and Dr. Jack Bentley." *Id.* The Commissioner argues that Ms. Hope's motion "establishes no basis for remand" because "a later favorable decision is not evidence for § 405(g) purposes." Doc. 14 at 17–18 (cleaned up).

In addition to the application subject to this appeal, Ms. Hope filed a subsequent application for SSI. *See* Doc. 13 at 1. The subsequent favorable decision is dated September 22, 2021. Doc. 13-1 at 1. It states in part: "We have determined that your condition is severe and results in a finding of disability. However, based on the evidence in file the earliest date that we can establish the onset of disability is 03/03/2021." *Id.* at 2. The ALJ's decision is dated July 16, 2020 – more than a year before the subsequent favorable decision and eight months before the determined onset date. R. 1054. The subsequent favorable decision specifically

refers to the February 26, 2013 report of Dr. Nichols and the June 19, 2019 report of Dr. Bentley, but it also refers to multiple records received after the date of the ALJ decision. *See* Doc. 13-1 at 2.

Although Ms. Hope argues that "the subsequent favorable decision and the medical evidence which was rejected support a sentence 6 remand," Doc. 13 at 6, the court is not persuaded. The court must affirm the ALJ's decision if it is supported by substantial evidence. *Hunter*, 808 F.3d at 822. As noted above, the ALJ's treatment of the medical opinions of Dr. Goff, Dr. Nichols, and Dr. Bentley is supported by substantial evidence, and Ms. Hope has made no argument or pointed to any specific objective evidence in the record to change that result. Additionally, Ms. Hope has not put forth any additional argument, aside from a two-page subsequent favorable decision that concludes a later disability onset date, to support remand under either sentence four or sentence six. Because Ms. Hope does not offer any other new evidence, she has not established remand is warranted. *See id.* Instead, she continues to reiterate unsupported arguments regarding the ALJ's treatment of the opinions of Dr. Goff, Dr. Nichols, and Dr. Bentley. As explained above, based on the regulatory framework and the evidence of record, the court finds that the correct legal standards were applied and the ALJ's decision was supported by substantial evidence.

## V.     Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. Additionally, remand under 42 U.S.C. § 405(g) is not appropriate. A separate order will be entered.

**DONE** and **ORDERED** this 27th day of September, 2022.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE